# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
          **PLAINTIFF,**

vs.                                  Case No. 22-CR-40084-TC

**ROBERT NELSON SMITH,**
          **DEFENDANT.**

## GOVERNMENT'S RESPONSE
## (RE: DOC. 63 MOTION TO TRAVEL)

**COMES NOW**, the United States of America, by and through Assistant United States Attorneys Skipper Jacobs and Sara Walton, and requests defendants' Motion to Travel (Doc. 63) be denied. In support the government offers the following:

### Summary

Defendant seeks the return of his passport to attend his daughter's graduation in El Salvador. The government construes this request as a motion to reopen bond proceedings. This requires defendant to show new information not previously known to him that has a material bearing on the conditions of release. Those conditions are intended to mitigate any risk of flight or danger to the community. The government bears the burden of proving risk of flight by a preponderance of the evidence. Given the defendant's charges, potential sentencing outcomes, connections and family ties to El Salvador, and severe limitations available to the government to extradite

1

defendant from El Salvador should he flee, the government submits the prohibition of defendant maintaining or possessing a passport cannot be removed without creating significant risk of flight.

## Statutory Basis for the Hearing

This request provides a threshold question of what standard applies to reaching the merits of Defendant's request. Defendant was released pursuant to conditions of release signed by United States Magistrate Judge Rachel Schwartz. Condition (7)(d) provides: "The defendant must…surrender any passport to: U.S. Probation Office." Condition 7(e) provides "The defendant must…not obtain a passport or other international travel document." Neither of these conditions are subject to discretionary relief. *Cf*. (Doc 8 at Cond. 7(s) "The defendant must…contact the U.S. Probation Office before opening any new line of credit, bank account without the approval of the U.S. Probation Office.")

Because the passport conditions are absolute, and not flexible, the government submits that defendant must bring any motion for relief under 18 U.S.C. 3142(f)(2) as a Motion to Reopen Detention proceedings using the two-step process of demonstrating there is new information the existence of which was previously unknown that has a material bearing on whether the conditions or release are adequate. This contrasts with the less formal Motion to Travel. The government intends to refer to this two-step process for a motion to reopen throughout this response with alternative arguments if, for the sake of argument, the Court rules to the contrary.

**Facts**

*a. The Indictment*

On November 9, 2022, defendant was indicted by a Grand Jury in Topeka, Kansas on multiple counts. He is charged in Count 1 with Conspiracy to Commit Wire Fraud. He is charged in Counts 2-11 with substantive Counts of Wire Fraud. He is charged in Counts 12-16 with substantive Counts of Wire Fraud. He is charged in Count 20 with Money Laundering. The Conspiracy to Commit Wire Fraud and substantive Wire Fraud Counts carry a potential penalty each of not more than 20 years imprisonment, three years of supervised release, a fine not to exceed $250,000 or an alternative fine, a mandatory special assessment, forfeiture, and restitution. The money laundering count carries a potential penalty of not more than 10 year imprisonment, supervised release of not more than 3 years, a fine not to exceed $250,000, a mandatory special assessment, restitution, and forfeiture.

In summary, between in or about January 2018 to July 2021, defendant was the CEO of St. Francis Ministries ("SFM") – a foster care organization. During this period, he conspired with codefendant William Whymark to defraud SFM through fraudulent billing of IT services. Further, defendant fraudulent used SFM company credit cards to pay for personal expenses, many of them related to travel. Finally, funds subject to the fraud were laundered by the defendant in at least one instance. The government estimates the provable loss to be approximately $4 million dollars – though this number is not agreed upon by defendants and is likely subject to significant litigation either at a trial or sentencing in this matter.

### b. Conditions of Release

On or about November 14, 2022, United States Magistrate Judge Rachel Schwartz imposed conditions of release as to this defendant. (Doc. 8). The conditions required the defendant to surrender his passport to the U.S. Probation Office. (Doc. 8 at cond. 7(d)). It further prohibited him from obtaining a passport or other international travel document. (Doc. 8 at cond. 7(e)). The conditions of release did not include a travel restriction, curfew, home detention, or electronic monitoring. *See* (Doc. 8).

### c. Defendant's Connections to El Salvador

Shortly after Defendant was hired as CEO for Saint Francis Ministries (SFM), he hired his wife (now ex-wife), as the Vice President and Director of International Ministries. One of her chief endeavors was the HOPES project which included the purchase and development of a 55-acre farm in El Salvador. Defendant went on to approve over $2 million in spending to support his wife's efforts in El Salvador. The farm allegedly was going to produce the "moringa" fruit and become a revenue stream for SFM. The farm never produced a profit and was sold by William Clark to an unspecified entity in El Salvador when Clark became St. Francis Ministries CEO in 2019.

During his wife's employment at SFM, she traveled to El Salvador frequently. Furthermore, since the opening of the Federal investigation and after her termination from SFM, his wife/ex-wife has traveled to El Salvador approximately twenty times. It would appear, his ex-wife spends enough time in El Salvador

necessary to enroll her daughter into a school in El Salvador from which she is graduating.

Jamie Palenski (SFM Accountant/Finance 2007-2018) stated during an interview that she could not identify what the purpose of Smith's wife's numerous trips to El Salvador were for. Palenski was under the impression Smith's wife was vacationing in El Salvador because of her social media posts identifying her being on the beach while in El Salvador allegedly on business.

During an interview in 2021, Clark stated he was aware that the Smiths were trying to move to El Salvador to work on the very farmland purchased (and sold) by SFM. During an interview in July 2021, Susan Montague (SFM employee for 40 years) stated she spoke with Smith at Christ Cathedral Church. Smith stated he intended to join his daughter and wife/ex-wife in El Salvador after he completed his dissertation. Montague stated Smith's ex-wife had made many connections in the country.

Defendant and his ex-wife are responsible for at least a $2m dollar investment in El Salvador, and the fact that their daughter is graduating as a student in El Salvador demonstrates significant ties to the country.

### d. MLAT and Extradition

Two elements of international law are appliable here were Defendant to elect not to return to the United States – extradition and mutual legal assistance treaties ("MLAT"). The governments of the United States and El Salvador have an extradition treaty but they do not have an MLAT. Practically this means were the

5

authorities in El Salvador to arrest Defendant on a violation of state, local, or federal law applicable in El Salvador, and he were thus in their custody, the United States could request his extradition back to the United States. However, there is no MLAT. Meaning there is no treaty authority to have El Salvadorian law enforcement aid the United States in the apprehension of Defendant. In other words, the United States cannot task El Salvador to go and arrest the defendant for the purpose of extradition. As such, were defendant to flee to El Salvador, there is little the United States could do legally to ensure his return to the United States.

## Arguments and Authorities

Title 18, United States Code, Section 3142 allows for the Court to detain or release a criminal defendant pending trial. Relevant here, Section 3142 places a burden on the government to prove by the preponderance of the evidence that defendant poses a flight risk to detain the defendant pending trial. When released, the Court is to impose the least restrictive conditions necessary to mitigate flight risk or danger. 18 U.S.C. § 3142(c)(1)(B); *See United States v. Buffo,* 1996 WL 620907 at *1(10th Cir. 1996) (unpublished).

Non-binding authority provides that a defendant seeking to modify the conditions of bond must move to reopen detention proceedings using the two step process in Section 3142. *United States v. Chambers*, 2023 WL 8254523 at *2 (D.Kan Nov. 29, 2023) (collecting cases). Specifically the Chambers Court provides:

> Section 18 U.S.C. § 3142(c)(3) allows the court to modify a pretrial release order "at any time ... to impose additional or different conditions of release," although it provides no guidance for how a court should go about doing so. Courts have widely held that the § 3142(f)(2) standard

> requiring new and material information applies to motions to modify conditions of pretrial release pursuant to § 3142(c)(3), essentially construing them as motions to reopen the detention hearing. See, e.g., United States v. Peguero, No. 3:21-CR-00010-RGJ-3, 2021 WL 4811315, at *2 (W.D. Ky. Oct. 14, 2021) (collecting cases); United States v. Gay, No. 4:20-cr-40026-JES-JEH, 2020 WL 5983880, at *2 (C.D. Ill. Oct. 7, 2020) (same). As one court explained, without such an interpretation, "a [d]efendant could file endless petitions to modify his conditions ... without the threshold showing required in Section 3142(f)(2)." Gay, 2020 WL 5983880, at *3.

*Id.*

"[T]he sole purpose of reopening a detention hearing is to give the moving party an opportunity to present evidence that was unavailable at the initial detention hearing. *United States v. Dermen*, 800 F. App'x 665, 669 (10th Cir. 2020) (unpublished). After the initial detention decision is made, the district court may reopen the detention hearing if it finds that (1) new information exists that was unknown to the movant at the time of the initial detention hearing; and (2) the new information has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of the community. *Id.* (citing 18 U.S.C. §3142(f)(2)).

Defendant fails step two of the analysis as he cannot present new information that has a *material bearing* on the issue of whether there are conditions of release that will reasonably assure his appearance at trial. This matter has been pending since November 2022, so arguably his daughter's graduation is new information necessary to establish step one of the process. But his travel to El Saldavor presents an extreme risk of flight. Defendant would be traveling to a foreign country, where he and his family have connections, and where the government would have

7

significant obstacles in securing his return if he failed to do so voluntarily.  Not only do those facts and circumstances present a serious risk of flight, they demonstrate an incentive for the defendant not to return when he faces multiple felony counts with potentially significant penalties.  The condition removing his passport from his possession and prohibition on acquiring a new one or another international travel document is the least restrictive condition to ensure defendant remains in the United States for trial.

## Conclusion

The risk of flight if defendant is allowed to travel to El Salvador is too great.  There is no condition that can reasonably ensure his appearance at trial were he to travel to El Salvador.  The fact that his daughter is graduating from high school is not new information with a *material bearing* on his continued appearance in Court.  Has such, his motion should be denied both for failing to meet the standard to reopen detention and on the merits.

Respectfully submitted,

s/Skipper S. Jacobs
Skipper S. Jacobs, #26848
Assistant United States Attorney
444 SE Quincy, Suite 290
Topeka, KS 66683
Phone: (785) 295-2850
Fax: (785) 295-2853
Skipper.jacobs@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2025, I electronically filed the foregoing Motion with the Clerk of the Court by using the CM/ECF system which will send an electronic copy to counsel of record.

                                                        s/Skipper S. Jacobs
                                                        Skipper S. Jacobs, #26848
                                                        Assistant United States Attorney